# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ANGELA FLETCHER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:15CV00015 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MITCH BROWN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Plaintiff; Katie M. DeCoster, Assistant Attorney General, Abingdon, Virginia, for Defendant.*

In this action for damages brought under 42 U.S.C. § 1983, the plaintiff alleges violations of her Fourth Amendment rights by a Virginia State Trooper in connection with her removal from her home for an involuntary psychological evaluation. The defendant has moved to dismiss, which motion has been briefed and orally argued. I find that application of qualified immunity is inappropriate at this stage of the case. Reviewing the plaintiff's allegations in the light most favorable to her, I hold that two of the causes of action of the Complaint state plausible claims for relief, while one does not.

I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss.

The plaintiff, Angela Fletcher, was married to a Deputy Sheriff of Scott County, Virginia. Fletcher and her husband were experiencing marital difficulties. "Her husband had told her previously that he, by virtue of his public law enforcement position, ha[d] personal relationships which he could rely upon, and that she would lose the children and all the marital property." (Compl. ¶ 3.)

On August 10, 2013, Fletcher and her husband had an argument, and her husband requested that the police come to the marital home. The defendant, Mitch Brown, is a Virginia State Police trooper who responded to the call. Brown arrived at the home accompanied by his supervisor, Brian Hubbard. According to the Complaint, both Brown and Hubbard were friends of Fletcher's husband.

Fletcher's husband told Brown and Hubbard that Fletcher had threatened to harm herself. Fletcher admitted to Brown and Hubbard that she had made such a statement during the argument with her husband, but stated that she did not actually intend to harm herself and had made the statement only in the context of the argument and out of concern that she may lose custody of her children.

Brown told Fletcher that he was taking her into custody for psychiatric evaluation. Fletcher refused to go with Brown, and Brown forcibly restrained her, dragged her to the police car, and placed her into the car with her hands and feet restrained. While she was in the car, Brown struck Fletcher with a police baton, injuring her leg.

Brown took Fletcher to the Scott County, Virginia, Sheriff's Office. He later took her to Lonesome Pine Hospital, where she underwent an involuntary psychiatric evaluation and was found not to be a danger to herself. She did not request medical treatment of her leg injury while at the hospital.

Next, Trooper Brown sought an arrest warrant for the charge of resisting arrest. According to the Complaint, he falsely told the magistrate that Fletcher had been placed under arrest when he had taken her into custody for psychiatric evaluation. The criminal charge against Fletcher was eventually dismissed with prejudice. However, prior to dismissal of the charge, Brown's allegedly false statements were used against Fletcher in domestic relations proceedings involving the custody of her children.

Fletcher was held in jail for several days before her bond was set and she was released. While in custody at the jail, she complained about the injury to her leg, but she was not given any medical treatment.

As a result of Brown's actions, Fletcher alleges that she suffered bodily injury, pain and suffering, humiliation, and emotional distress. She has asserted three Fourth Amendment claims against Brown under § 1983: (1) unlawful seizure without probable cause; (2) use of excessive force; and (3) making false statements to secure an arrest warrant.

Brown has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. He argues that none of the Complaint's claims are legally cognizable. In addition, he contends that he is entitled to qualified immunity from suit.

II.

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the plaintiff's complaint and any documents attached to it or incorporated by reference. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] The defendant erroneously asserted his qualified immunity defense under Rule 12(b)(1) rather than Rule 12(b)(6), and he submitted several exhibits in support of his Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Because I find that the presence or absence of qualified immunity is not a jurisdictional issue, I will consider the qualified immunity defense as part of the defendant's Rule 12(b)(6) motion. I will not consider affidavits submitted by Brown, as they are not referenced in or integral to the Complaint, but I will consider the Criminal Complaint, Order in Misdemeanor or Traffic Infraction Proceeding, and Petition for Involuntary Admission for Treatment, as these documents are referenced in and integral to the Complaint. *See Amer. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (explaining that while normally a Rule 12(b)(6) motion must be decided based solely on the Complaint and any documents attached thereto, the court can consider documents attached to the motion to dismiss as long as their authenticity is not challenged and they are explicitly referenced in and integral to the plaintiff's complaint).

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

In ruling, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). However, the court is not required to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. When deciding a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). While state officials sued in their official capacities are not "persons" under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), state officials sued in their individual capacities are "persons" within the meaning of the statute and are not absolutely immune from suit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991). A government official sued in his individual capacity under § 1983 may, however, be entitled to qualified immunity. *Id.* at 25 ("[O]fficials

sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.")

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cty.,* 713 F.3d 723, 731 (4th Cir. 2013). Qualified immunity is immunity from suit rather than merely immunity from liability; therefore, the question of qualified immunity should be decided before trial. *Id.* A defendant asserting qualified immunity has the burden of proving the defense. *Id.*

A court deciding the applicability of qualified immunity must determine "whether a constitutional violation occurred" and "whether the right violated was clearly established." *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013). A right can be clearly established even if there does "not exist a case on all fours with the facts at hand," as long as pre-existing law makes the right apparent. *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015). Where a plaintiff "(1) allege[s] a violation of a right (2) that is clearly established at the time of the violation," a motion to dismiss on qualified immunity grounds must be denied. *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

A.

Subject to certain limited exceptions, the Fourth Amendment to the Constitution prohibits the seizure of a citizen by law enforcement without probable cause to believe the person has committed a crime. U.S. Const. amend. IV; *Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013); *Herring v. United States*, 555 U.S. 135, 136 (2009). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict" the person of a crime. *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* (quoting *Gray*, 137 F.3d at 769).

A Virginia statute permits a law enforcement officer to take temporary emergency custody of a mentally ill person for the purpose of obtaining an involuntary psychological evaluation when certain criteria are satisfied. Va. Code Ann. § 37.2-808. To invoke the procedures described in the statute, an officer must have probable cause to believe that the person:

> (i) has a mental illness and that there exists a substantial likelihood that, as a result of the mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

Va. Code § 37.2-808(A), (G). The officer's probable cause must be "based upon his observation or the reliable reports of others." Va. Code § 37.2-808(G).

The Fourth Circuit has decided three cases involving seizures for involuntary psychological evaluations based on threats of suicide. In *S.P. v. Takoma Park*, 134 F.3d 260, 264 (4th Cir. 1998), officers arrived at the plaintiff's home after being erroneously informed by a dispatcher that the plaintiff was possibly suicidal. The plaintiff was agitated, crying, and told the officers that she and her husband had been arguing. *Id.* However, "she denied having any suicidal thoughts, being depressed, or being under the care of a physician." *Id.* at 267. The supervising officer decided to take the plaintiff to the hospital for psychiatric evaluation, but the plaintiff resisted. *Id.* at 264. The officers then handcuffed her and removed her from the home. *Id.* One of the officers filed a petition for emergency psychiatric evaluation in which he indicated, "She told us [that] if it was not for her kids she would end her life. She told me [that] she would disappear by the end of the day." *Id.*

The doctors who initially examined the plaintiff in *Takoma Park* found that she "had a mental disorder, needed inpatient care, presented a danger to herself, was unable or unwilling to be voluntarily committed, and there was no less restrictive intervention available." *Id.* Her husband learned of the situation and informed the hospital that his wife's detention was the result of a communication

error with the police department, but the hospital nevertheless involuntarily admitted the plaintiff. *Id.* at 265. The next evening, the hospital's attending psychiatrist examined the plaintiff and determined that she was neither mentally ill nor suicidal. *Id.* The next morning, the hospital released her from custody. *Id.*

The plaintiff claimed that the officers violated her "Fourth Amendment right to be free from seizure for the purpose of medical treatment absent probable cause to believe that she suffered from a mental disorder, posed a danger of serious harm to herself, and that there was no less restrictive alternative available consistent with her welfare." *Id.* at 265-66. The Fourth Circuit concluded that "the contours of such a right were not clearly established so as to make the unlawfulness of these officers' actions apparent," so the officers were entitled to qualified immunity. *Id.* at 266. The court stated that in the mental health context, there is a clearly established general right to be free from seizure unless the officer has probable cause to believe the individual poses a danger to herself or others. *Id.* The court held, however, that to overcome qualified immunity, the clearly established right must be defined more specifically. The plaintiff "must demonstrate that the particular actions of these police officers were unlawful under the law established at the time of the incident." *Id.* Because at that time the court had decided only one case involving seizure for mental health evaluation, *see Gooden v. Howard Cty.*, 954 F.2d 960 (4th Cir. 1992), and that case had been resolved in favor of the

law enforcement officers, the Fourth Circuit affirmed the district court's dismissal of the action on qualified immunity grounds. *Takoma Park*, 134 F.3d at 267-68. The court noted that the officers "had ample opportunity to observe and interview" the plaintiff. *Id.* at 267. The court further noted that the officers had acted pursuant to a state statute that allowed for involuntary detention and transportation for mental evaluation when it appeared that a person suffered from a mental disorder and posed a clear and imminent danger to herself or others. *Id.*

Five years later, the Fourth Circuit affirmed a denial of qualified immunity in *Bailey v. Kennedy*, 349 F.3d 731, 734 (4th Cir. 2003), holding that "the police officers violated clearly established federal law" when they seized the plaintiff for a psychiatric evaluation. In *Bailey*, a 911 operator reported that the plaintiff was intoxicated, depressed, and told a neighbor that he was going to commit suicide. *Id.* When an officer responded to the home of the plaintiff and his parents, the plaintiff was intoxicated but denied having suicidal thoughts and declined the officer's request to search the house, instructing him to seek permission from his father. *Id.* No weapons or evidence of suicide preparations were visible, though the plaintiff told an officer that his father owned some guns that were locked in a gun safe. *Id.* The plaintiff showed the officer to the door, and the officer stepped outside. *Id.* at 735.

Another officer arrived at the home, and the first officer told him they were "going to have to do something," and then began a radio conversation with his supervisor. *Id.* The second officer knocked on the door, and the plaintiff opened the door while speaking on the phone with his sister-in-law. *Id.* The plaintiff told the officer that the suicide report was "crazy," that the officers should leave, and that he planned to call a lawyer. *Id.* The plaintiff attempted to close the door and reached toward a cabinet where the phone base was located, but the officer placed his foot in the doorway and grabbed the plaintiff's arm to pull him onto the porch. *Id.* The officers tackled the plaintiff to the ground and handcuffed one of his wrists, and then one of the officers struck the plaintiff in the face several times, injuring him. *Id.* The officers eventually took the plaintiff to a hospital and later obtained a commitment order from a magistrate without disclosing that the plaintiff was already in custody. *Id.* at 736.

The plaintiff claimed that the officers had violated his Fourth Amendment right to be free from unreasonable seizure when they seized him and took him to the hospital without probable cause. *Id.* at 737. The Fourth Circuit found that the 911 report alone was insufficient to create probable cause and that the police had not observed any evidence to support the assertion that the plaintiff was suicidal. *Id.* at 740-41. In determining whether the officers were entitled to qualified

immunity, the court framed the question as whether, at the time of the events in question,

> it was clearly established that a police officer may not detain someone for an emergency mental evaluation based only on a 911 report that the person was suicidal, where the officers were able to observe the person alleged to be suicidal and observed nothing indicating that the person might have been a danger to himself.

*Id.* at 741. The court held "that it was clearly established that probable cause was lacking in such a situation." *Id.* Therefore, the officers were not entitled to qualified immunity.

Most recently, in *Cloaninger v. McDevitt*, 555 F.3d 324, 327 (4th Cir. 2009), the Fourth Circuit affirmed an award of summary judgment in favor of law enforcement officers based on qualified immunity. In *Cloaninger*, a man called a Department of Veterans Affairs ("VA") hospital because he was not feeling well and thought he was having an adverse reaction to prescribed medication. *Id.* at 328. A woman at the hospital said she would call him back, and while waiting for her return call, the man drank some bourbon. *Id.* The woman called back and said she was sending someone to take the man to a nearby hospital. *Id.*

A doctor from the hospital apparently told a 911 dispatcher that the man had threatened suicide, which the dispatcher relayed to police officers along with a request that the officers conduct a welfare check. *Id.* n. 2. When an officer arrived at the man's home, the man asked if he was there to take the man to the hospital.

*Id.* at 328.  The officer indicated that he was only checking to see whether the man was okay, and the man then demanded that the officer leave.  *Id.*  A second officer arrived and told the first officer that the man had previously made suicide threats and that officers responding to those threats had found firearms in the home.  *Id.*  A sergeant was called to the scene to assist in communicating with the man, and the man demanded to be taken to the VA hospital.  *Id.*  When the officers refused to take him there, the man told them if they did not leave his property, he would kill them and then kill himself.  *Id.*  The sergeant contacted the VA hospital, and a nurse told him that the man had a history of threatening suicide.  *Id.*  The sergeant and the nurse agreed to seek an emergency commitment order.  *Id.* at 328-29.

The sergeant called the magistrate, who agreed that emergency commitment was appropriate.  *Id.* at 329.  A struggle ensued between the man and the officers, and the man was eventually taken to the magistrate's office and then to a hospital emergency room.  *Id.*  The examining doctor concluded the man was too intoxicated to undergo a psychiatric evaluation and declined to order involuntary commitment.  *Id.*  The man was taken to jail for the night and returned to the hospital the next day.  *Id.*  His injuries were treated and he was released, but he was charged with resisting arrest and communicating threats.  *Id.*  The first charge was ultimately dismissed, but the man was convicted of the second charge.  *Id.*

The man asserted a § 1983 claim against the officers, contending that they had violated his Fourth Amendment rights by unlawfully arresting him. *Id.* The district court granted summary judgment in favor of the officers, finding that they had probable cause to arrest the man and that they were entitled to qualified immunity. *Id.* at 330. Noting that "these defendants had much more information available to them than the mere 911 call in *Bailey*," *id.* at 333, the Fourth Circuit found that the officers had probable cause to seize the man. Particularly important to the court's analysis was the man's known history of making suicide threats. *Id.* at 334. The court went on to explain that "[w]hile probable cause is sufficient to effect a seizure, the unique qualities of the home prohibit seizures there without a warrant or exigent circumstances." *Id.* However, the court held that the objective dangerousness of the man and the unstable situation at the house were exigent circumstances that relieved the officers of the obligation to obtain a warrant. *Id.*

Turning to the present case, the allegations in the Complaint amount to more than the evidence deemed insufficient to create probable cause in the *Bailey* case. Hubbard wrote on the petition for commitment that the officers observed Fletcher crying and giving inconsistent statements, but Fletcher disputes that assertion. Fletcher denied having suicidal thoughts and explained the reason for and context of her purported suicide threat. The record before me contains no suggestion that Fletcher had previously attempted or threatened suicide, that she was under the

-14-

influence of any substance, that any weapons were visible in the home, that she was being treated for depression or any other mental illness, or that there was any evidence of preparations for suicide. Based on this limited record, which has not yet been developed through discovery and which I must at this time accept as true, I cannot find that a reasonable officer would have concluded that probable cause existed to believe Fletcher posed an imminent danger to herself or others. Instead, I find that Fletcher has pleaded a facially plausible claim that Brown violated her clearly established right to be free from seizure for emergency psychiatric evaluation based solely on a disclaimed threat of suicide, when the officers observed no other evidence that would lead them to believe that Fletcher posed an imminent threat to herself or others. Therefore, I must deny the Motion to Dismiss as to the first claim of the Complaint.

B.

The Fourth Amendment's prohibition on unreasonable searches and seizures also encompasses the right to be free of "seizures effectuated by excessive force." *Henry v. Purnell*, 619 F.3d 323, 331 (4th Cir. 2010) (internal quotation marks and citation omitted). To determine whether an application of force was excessive, I must consider whether the defendant officer's actions were objectively reasonable under the circumstances. *Id.* This inquiry is a particularly fact-sensitive one. *See id.*

The Complaint alleges that after Fletcher "was in the car seat and restrained, Brown struck her across her shin with a law enforcement striking weapon referred to as an 'asp,' causing serious and permanent injury to her leg." (Compl. ¶ 5.) Brown wrote in his criminal complaint that Fletcher had kicked his hand, but it is unclear when that may have occurred in relation to Brown's use of the asp to strike Fletcher. Based on the Complaint's allegations, which must be accepted as true for purposes of the instant motion, Fletcher has stated a plausible claim for use of excessive force in violation of the Fourth Amendment. I find that a reasonable officer would not have believed that the circumstances described in the Complaint justified striking Fletcher across her shin with an asp. It is clear from Brown's affidavit that his version of events is different from the description in the Complaint, but Brown's affidavit is not properly before me and I cannot consider it in deciding the motion to dismiss. Therefore, I find that Brown is not entitled to qualified immunity on the excessive force claim at this time, and I will deny the Motion to Dismiss as to that claim.

C.

To prove her final Fourth Amendment claim regarding false statements made to the magistrate, Fletcher must show that through his false testimony, Brown "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in

plaintiff's favor." *Evans*, 703 F.3d at 647. As these elements make clear, "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Id.* Therefore, "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.* These intervening causal acts insulate the police officer from liability. *Id.*

Fletcher alleges that when Brown was seeking an arrest warrant for the resisting arrest charge, Brown indicated to the magistrate that he had told Fletcher she was under arrest. Brown also allegedly failed to inform the magistrate that he had seized Fletcher for psychiatric evaluation and not because he believed she had committed any crime. According to Fletcher, a seizure for emergency psychiatric evaluation is not an "arrest" for purposes of Virginia's resisting arrest statute. Fletcher also argues that she had a right to resist an unlawful seizure. *See Brown v. Commonwealth*, 497 S.E.2d 527, 530 (Va. Ct. App. 1998).

The state statute under which Fletcher was charged provides that "[a]ny person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-479.1(A). The statute defines "intentionally preventing or attempting to prevent a lawful arrest" as

> fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.

Va. Code Ann. § 18.2-479.1(B).

The problem with Fletcher's claim is that following the magistrate's issuance of the arrest warrant, Fletcher was found guilty of the charge in state court. The state judge's finding of guilt broke the causal chain between any false or misleading statement by Brown and Fletcher's conviction. Moreover, a finding of guilt requires a greater standard of proof than a finding of probable cause; thus, Fletcher's conviction indicates that probable cause existed for issuance of the arrest warrant. While Fletcher appealed her conviction to the state circuit court, the charge was not resolved on the merits, but dismissed on speedy trial grounds. (Order, Cir. Ct. Scott Cty., Va., Sept. 4, 2014, ECF No. 7-2.) Therefore, I find that the third claim of the Complaint fails to state a plausible claim upon which relief can be granted, and I will grant the Motion to Dismiss as to that ground.

D.

Brown also challenges Fletcher's demand for punitive damages. A Rule 12(b)(6) motion is often a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law. Punitive damages are available in a § 1983 action when the public

official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Complaint in this case alleges that Brown's actions were motivated by an intent to harm Fletcher and benefit her husband, who was a friend of Brown. I find that the allegations are sufficient to state a plausible claim for punitive damages. Of course, at the summary judgment stage, the plaintiff may be required to show the factual basis of her claim. At this point, however, I will not preclude recovery of punitive damages.

III.

I emphasize that I merely hold that Fletcher's first two claims are sufficient to survive a motion to dismiss. *See Tobey*, 706 F.3d at 387 ("A Rule 12(b)(6) motion to dismiss 'does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.'") (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART.

ENTER: March 24, 2016

/s/ James P. Jones
United States District Judge